1-24-1823-WC HCR Manor Corps Appellant Cross Appellee by Logan March v. Illinois Workers' Compensation Comm'n et al. Dahima Ralston Appellee Cross Appellant by Darren Romanek. Counsel Marsh, you may proceed. May it please the Court, my name is Logan March and I am here on behalf of Plaintiff Appellant HCR Manor Care. HCR appeals the Commission decision awarding causation, medical care, and TTD. The Defendant Appellee employee also filed a cross appeal of the Circuit Court's denial of its motion to dismiss. I'm going to begin with the procedural issues in this case. The Circuit Court's denial of the Defendant Appellee's motion to dismiss was proper and not contrary to law. The employee argues that because the Commission decision was issued on 11-28-23, the appeal to the Circuit Court per Section 19F of the Illinois Workers' Compensation Act was due 20 days thereafter or on 12-18-23. However, per the Illinois Administrative Code Section 9015.50d and 5 ILCS 70.70-1.11 are clear. Under the first one, 9015.50d, for the purpose of computing time for any party to respond, any document is, quote, deemed to be served the next business day following the date of transmission. Under the second one, 70.70-1.11, the time with which any act provided by law is to be done shall be computed, quote, by excluding the first day and including the last. So here, the 20th day after 11-28-23, excluding the first day and including the last, is 12-29-23, the day in which the appeal documents were filed by respondent. So HCR's appeal... Counsel, let me stop you for a second. With your opening brief, do you cite any case law besides the two cases for the standard of review throughout your entire brief or your argument? In our initial brief, I do not believe that we did. Was there no case law that applied to these issues? I do not believe that we felt that our arguments needed support in case law. We did cite a case in our response brief. So what's the standard of review? The standard of review is... of which part, Your Honor? Well, basically, you didn't put it in there. The standard of review for the commission decision is the manifest with the evidence. But it was not included in your brief in response to Justice Barbera's question. Is that correct? The standard of review was included in the brief. Oh, okay. It's on page 6 of our brief. We did cite Traveler's Insurance and Murty v. Edgar. Sorry, Traveler's Insurance versus Precision Cabinets. Thank you. And in your reply brief, you cite to one case. Is that correct? Yes, that's correct, Your Honor. And did we... do you distinguish any of the, you know, full page of cited cases that your opponent cites in their initial brief? In their initial brief, their cases were dealing with the standard of review for a motion... or for the manifest with the evidence. And that is the correct standard of review. Okay. All right. Go on. So as I was saying, HCR's appeal was timely filed within 20 days per the statute. But even if the court is not persuaded by the clear language of these statutes and also believes that Judge Duffy's calculation was incorrect, the motion dismiss is still properly denied because the appeal was filed within 20 days of receipt of the decision. So one case we cited is Esquire v. Illinois Workers' Compensation Commission. And in that case, the court calculated the timeliness of an appeal of a decision filed 20 days after receipt, but more than 20 days after issuance, which is the case that we have here. The court there held that the proper calculation for timeliness is 20 days after receipt. HCR, in this case, received notice of the decision on 11-29-23, as Mr. Flores's affidavit shows. The 20th day after that was 12-19-23. HCR filed its appeal on 12-19-23. So the appeal was timely and the motion dismiss was correctly denied. Accordingly, HCR asked that this court affirm the circuit court's denial of the employee's motion dismiss. I'm going to now turn to the substantive issues in this case. So the commission erred. So the first issue or the main issue is causation. And the commission erred in affirming the arbitrator's decision because petitioner proved that her lumbar condition was causally related to the 6-18-16 work accident. And they also failed to adequately consider evidence that petitioner experienced a 2-12-18 car accident that broke the chain of causation. So I'm going to begin with Dr. Warner's causation opinion, which is more compelling than Dr. Ghanayam's. Dr. Warren performed a tam— May I interrupt here? In your brief, your statement of facts, you recapped the testimony of three witnesses, the plaintiff, Tawanda Evans, and Dr. Weiner. Yes, your honor. Now I'm confused. You mentioned another witness. Was there another witness? I do not believe I mentioned another witness. In the brief. I'm sorry, could you repeat your question? I think your brief just mentioned three witnesses, but now you've mentioned Dr. Ghanayam and his evidence step. I don't think your brief—perhaps I have that wrong. I don't think I do, but I don't think your brief in the statement of facts discussed Dr. Ghanayam. I think you may have omitted discussing Dr. Ghanayam. Am I wrong? I believe you are correct. We discussed Dr. Ghanayam— Just FYI, FYI, the statement of facts is, you know, I think supposed to include the good ones for you and the bad, you know, others. Yeah, I understand, your honor. The—you're also supposed to research the case for us, not leave it to us to go find cases that support your position. I think if you weren't aware, I just think it's a powerful thing to be aware of the rules. Sure, your honor, I appreciate that. I wanted to give you that power. Thank you. Just so that you know, without having any argument, you know, without supporting your argument, I mean, it's grounds for us to strike the brief in whole. Because right now, what you've done is made an argument for us and said, go find out if this is right. Because I'm not supplying any support for the argument, I'm just making the argument. I'm not inclined to do that, but that doesn't mean that the rest of the panel won't. But that is something that I found lacking in this and quite disturbing, quite frankly. I apologize for that, your honor. I believe that we felt that the facts spoke for themselves, but I understand— Well, I understand that, but, you know, with the issues that you're dealing with, the body of law of workers' comp is replete with cases that, you know, support or refute all of these issues. Certainly, we could have thrown a few in to either support your argument or to say that, you know, it's something that can be distinguished or whatnot. But just, again, I'm just adding on to what Justice Mullin said, so feel free to continue with your argument. Understood. I appreciate that. Thank you. So, Dr. Werner performed a 10-12-16 IME, and at that time, petitioners stated that she was 75% improved and that her chiropractors discussed returning her to light duty in one week. She also reported several prior motor vehicle accidents occurring four years prior, the most recent one. And then on physical exam, she had no pain to light palpation, normal gait, mild low back pain with axial compression, and no pain with axial rotation. So, given these symptoms and the objective evidence that she reviewed and the records, she diagnosed the petitioner with a lumbar strain or soft tissue injury and determined that she could return to work full duty and was at MMI. She authored an addendum on 3-24-20, and at that point, she reviewed a lumbar MRI and intervening treatment records, and she affirmed her initial decision, her initial opinion, I apologize, that petitioner experienced only a lumbar strain, and the MRI did not support disc herniation. Dr. Ghanayam diagnosed L3-4 disc injury with annular tear. However, Dr. Werner's opinions are more credible. She has more experience and expertise in lumbar injuries. She's an orthopedic surgeon with 31 years of experience, and 50% of her practice involves treatment. Can I ask a question? Did you find a case that said if one doctor's more educated and experienced than the other, then we can reverse the commission if the commission goes with the less experienced, less credentialed doctor? Did you find a case on that? I know you've said you deliberately chose not to cite any cases. You didn't think that was necessary, but maybe since you've written the brief where you made the choice not to cite a single case in support of your argument, maybe you found a case that said we can ignore the concern that we might be reweighing the evidence, because, Doctor, is it Ghanayam or Ghanayam? I may ask you. I think it's Ghanayam, but I'm not sure. He said he saw a herniation and an annular tear. Doctor, is it Weiner? Yes. Didn't? I mean, but we can reweigh, especially where the doctor that the commission does not credit if they have better credentials and more education. I do not have a case that shows that today, Your Honor. Should we be concerned about it, though, given that we know we're not supposed to reweigh the evidence? Well, I don't think it's a reweighing of the evidence. I think there's more evidence. But it's up to them, isn't it, to decide what's more weighty, what they want to credit. That's the word that we often use. It's up to them to decide that. It is up to the commission to weigh the evidence in the arbitrator. But in this case, it's the evidence of her extensive experience against just the opinions of a traitor without evidence of their experience, their credentials. I would feel less concerned about accepting your argument had you found a case and put it in your case. Maybe more that said the appellate court could do that. So I would, again, offer that power to you. And I do think 341, Supreme Court Rule 341, indicates that. And I'm surprised that you've told us this morning that you made the choice not to put any cases in because it was just superfluous. I understand, Your Honor. So, Ergo, do you consider the Supreme Court rules superfluous? I do not. Okay. So, again, our position is that Dr. Werner's opinion and experience was significant and showed that Petitioner did suffer, did experience only a soft tissue lumbar strain and had reached MMI and could return to full duty as of 10-12-16. To the extent that the radiographic studies demonstrated annular fissure as Petitioner's treater opined, she reviewed those and determined that those fissures were inconsistent with her complaints of right-sided pain. And so based on these, we argue that Dr. Werner's opinions on causation were more compelling than Dr. Ghanayam's and her opinion should be the opinions that carry the day. If you are not convinced by that and do not believe that there's sufficient evidence in the case, in the decision, Arbitrator Watts briefly notes that Petitioner had a history of motor vehicle accidents. However, he found that there was no evidence that Petitioner's motor vehicle accidents in any way changed or altered the conditions for lumbar spine. But this is not the case. On 2-12-18, Petitioner was involved in a motor vehicle accident where her car was rear-ended. She went to St. Francis Medical Center emergency room where she reported, quote, twinges of low back pain now, comma, onset well after the crash. Her reflection at this point would be most vivid and accurate and she further noted left leg pain. She was diagnosed at that appointment with lumbar strain due to a motor vehicle accident as well as left lower extremity contusion and she was prescribed Tramadol. Her prior complaints that she was treating for were for right low back pain. So following this workplace accident, she reported, so following this accident, she complained with worsening left low back pain and she then underwent treatment for left low back pain. The commission failed to consider the significant evidence that Petitioner's pain complaints changed following the 2-12-18 motor vehicle accident. Yeah, can you wrap it up? The red light appears to be on. You'll have time in reply. I see. So in short, if the commission does not agree with, or sorry, if your honors do not agree with our argument on Dr. Wenner being more credible, we ask that you determine that there was an intervening car accident on 2-12-18 that cut the cause of connection. Thank you. Any questions from the bench? Further questions? Mr. Romanek, you may respond. Good morning. May it please the court and good morning, Mr. March. First of all, with respect to the circuit court order on jurisdiction, uh, I believe in our reply brief, we cited two cases, uh, recently decided by this court that I, that I, that at least we tried to argue, we're pretty much on point. The first one being the South Berwyn school district number 100 case, which, uh, an important part said it's not the receipt of the decision of the commission, but the receipt of notice of the, uh, uh, decision of the commission that causes the 20 days of 19 F1 to begin counting down. And, uh, the second case that we cited in our reply brief is the Rashad Singleton case. And the Rashad Singleton case said in pertinent part that the, um, uh, finding what the, uh, pardon me, the decision in the Singleton case from this court was that the, uh, the 20 days from 19 F1 begins to run on the date that the email notifications state that they were sent to the claimant. So when we apply the Singleton case and the South Berwyn school district 100 case, the count would then have begun on November 29th and the 20th day would have been December 18th. So the filing on December 19th would have been outside the 20 days. Um, so we'd be asking that the circuit court's order with respect to jurisdiction be reversed by this court with respect to the underlying case. Uh, the first thing that Mr. March was talking about was that Dr. Weiner had the opinion when she saw, uh, Dehema Ralston on October 12th of 2016, that Dehema Ralston had a soft tissue injury. Well, with respect to that, Dr. Weiner is on an island all by herself because, uh, in the record, there were 12 doctors that concluded that Dehema Ralston had a significant, uh, disc injury in her lumbar spine. First of all, Dr. Alexander Ganium at the time of his evidence deposition was the chief of orthopedic spinal surgery at Loyola University Medical Center. And I believe Justice Mullen was talking about, uh, if I remember correctly, that Dr. Ganium had concluded that, uh, the, uh, there was a Fisher tear as well as a, as a doctor that there was a doctor that did an MRI. It was Dr. Pay PAI, I believe on December 23rd of 2016. And he concluded that Dehema Ralston had disc herniations. There were numerous doctors that saw Dehema Ralston at Erie Foster Medical Center and, uh, also Dr. Brian Chung and other doctors at Northwestern University Pain Center. All of these doctors concluded that Dehema Ralston had a significant injury to her lumbar spine that included a herniated disc with respect to causal connection, causal connection, uh, in terms of the cause of this injury and the mechanism in this record, uh, there is clear testimony from Dr. Ganium that, uh, there was causal connection, the mechanism, mechanism of injury, which was Dehema Ralston moving a draw sheet as a hospice nurse for 108, 180 to 200 pound patient on June 18th of 2016 was a proper mechanism of injury. And with respect to causal connection, there was Dr. Ganium, there was Dr. Leitch, who was a neurosurgeon at Swedish Covenant Hospital, who treated Dehema Ralston, who said that, uh, the disc injury was causally connected. Then again, all of the doctors at the Erie Foster Medical Center and all the doctors at the Northwestern University Pain Center. And with respect to credibility, um, and I think, uh, to Justice Mullen's point, um, um, the argument from, uh, the employer that Dr. Weiner's causation opinion is more compelling than Dr. Ganium's causation opinion is not only inaccurate, but it's also asking this court to do something that this court, uh, as Justice Mullen had pointed out is not to do, which is reweigh the evidence and choose which evidence is more credible. Uh, the employer's assertion completely ignores the evidentiary record because Dr. Ganium, as I had just pointed out, was far from the only doctor who had concluded that Dehema Ralston suffered a significant lumbar spine injury that included disc herniations. So the commission essentially disregarded Dr. Weiner's assertion that Dehema Ralston suffered a soft tissue lumbar strain. Since the only doctor that saw Dehema Ralston of numerous doctors, only Dr. Weiner concluded that this was a soft tissue injury. So the evidence that there was a significant disc injury and it was a disc, pardon me, a significant lumbar spine injury that included disc herniation, that evidence is abundant. Now, with respect to temporary total disability, uh, the commission, uh, awarded, I believe, 308 and four-sevenths weeks of temporary total disability benefits. And the evidence with respect to temporary total disability was, uh, the commission had concluded was a very strong. Also Tawanda Evans, the, uh, uh, person who was the, uh, designate, the, uh, I believe the, uh, forgetting the exact words that were used, but Tawanda Evans, when she went to Ms. Evans testified at trial said that if Dehema Ralston were to come back to work, they had made her an offer to come back to work, but it would only be as a hospice nurse, which was the job she had on the date of her injury. And she couldn't do that job. Dr. Ghanayem, uh, had opined that, uh, light duty, uh, did not exist for hospice nurses, a light duty. And then, as I just said, a light duty offer was never made. Full duty would not be appropriate for Dehema Ralston. So if there's no light duty available, um, then, uh, Dehema Ralston could not return to work as a hospice nurse because it's simply not a light duty job. And then Dr. Ghanayem stated on September 23rd of 2021, given that Dehema Ralston has not had a job offer to return to work at light duty, and Dehema Ralston should remain off work at this time from her old job as a hospice nurse. And with respect to the medical, the, uh, commission also, uh, had disregarded the opinion of Dr. Wainer and the commission relied heavily in the, uh, with respect to the, uh, awarding of the medical benefits, uh, commission relied heavily on Dr. Ghanayem's opinions. And, um, yeah, I mean, I mean, with respect to the medical, there was heavy reliance on Dr. Ghanayem's opinion. Dr. Wainer's opinion was completely disregarded. So, um, first of all, we believe that the circuit court did not have jurisdiction to hear this appeal because the, uh, the appeal itself was filed on the 21st day, uh, outside of the requirements of 19F1. And then with respect to, uh, causal connection, it is our position that the causal connection evidence that we put forth is overwhelming, proving that Dehema Ralston suffered significant, uh, spinal, significant injury, injuries to her lumbar spine that included a disc herniation. And with respect to the medical and with respect to the TTD that was awarded, again, it was all based on factual evidence that was in the record. So if this court decides that there was jurisdiction, uh, then we're asking that the, uh, decision decisions of the commission with respect to causal connection, temporary total disability benefits, and the, uh, medical that were, that, uh, was awarded, we're asking that all of that be affirmed. Thank you. Thank you, counsel. Regarding, if I may judge, uh, the jurisdictional issue, how do you get around the statute on statutes and the regs? It seems to me clear that it was served on, I've got the calendar from 2023 in front of me, and that's how I need to do it. Uh, the email was the 28th. We don't count that. We start on the 29th, uh, per the reg, because the reg is dealing with e-service, the regulation, excuse me, judge. Um, and, and then the statute on statute says you don't count that first day. So doesn't Mr. March have it right? Well, uh, I don't think so. I thought that the interpretation from the South Berwyn School District 100 case and from the Rashawn Singleton case was that the 28th did not count. And then the count began on the 29th. So if the count begins on the 29th, then the 20th day would have November. Then the 20th day would have been December 18th. That was how I interpreted it. All right. Thanks. Any further questions from the bench? Okay. Yeah, I believe it's Mr. March. March, you may respond or reply. Uh, I just want to briefly respond to a couple of points. Um, as opposing council noted, the commission or the arbitration and commission decision, uh, did not take Dr. Werner's opinions, uh, into the decision. They did not adopt them. And as I've said before, Dr. Werner has extensive experience in this area. She is an expert in her field. She saw petitioner twice, uh, and within a few years of each other, and both times came to the same conclusion. And her opinion is a number of other, uh, another, a number of other treaters, but she is, uh, as I said, an expert in the field. She's very good at what she does and her opinion is clear. Um, and so we believe that on TTD, the benefits should be awarded. Uh, first, we believe that petitioner failed to prove lumbar causation. Um, but if the commission is convinced that there was causation, we think that TTD should be awarded from 6-18-16 to 10-12-16, the date of the IME. And if the, if the, uh, this court is not convinced about Dr. Werner's opinions, that TTD should be awarded from 6-18-16 to the 2-12-18 intervening accident. Um, and so we believe that the petitioner should be awarded from 6-18-16 to the 2-12-18 intervening accident. Accordingly, uh, HCR asks this Honorable Court to affirm the commission's, or the circuit court's dismissal of the employee's motion dismiss and to reverse the commission's decision on causation, TTD, and prior medical benefits. Thank you. Okay, further questions from the bench? Okay. I think all your arguments are all in, as we say, uh, council. So we thank you, both, for your arguments in this matter this morning. We'll be taking, under advisement, a written disposition shall issue. And at this time, the clerk of our court... Justice Holdredge? Yes, yes. This is the cross appeal. So, um, Mr. Romanek has five minutes left for his rebuttal. Yes, I just, that's why I assumed he didn't use his time and everybody was all in. But you can, uh, engage in rebuttal, Mr. Romanek. Uh, you know, if I could, there was just one thing that I did not address with respect to the, um, allegation that there was the intervening accident on February 12th of 2018. The commission, in its decision, pointed out that Dr. Wehner failed to support, um, the employer's claim that the employee's 2-12-18 work accident was an intervening accident that broke the chain of causation. Dr. Wehner testified that she never had any records of any kind to review with respect to Dehema Ralston's February 12th, 2018 motor vehicle accident. And Dr. Wehner further testified that she did not have a specific opinion as to whether or not the 2-12-18 motor vehicle accident had any bearing on or changed any of the opinions Dr. Wehner expressed on October 12th of 2016. Nor did Dr. Wehner know whether or not the February 12th, 2018 motor vehicle accident changed or altered the condition of Dehema Ralston's 2-12-18 motor vehicle accident. And I think that's all that I wanted to address because I neglected to mention that the first time. Thank you very much. Yeah, well, we'll proceed one last time. Everybody all in? Okay, uh, then in this matter, uh, all of it will be taken under advisement written disposition shall issue and the clerk of our court will escort you from our remote courtroom at this time.